

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

March 3, 2008

**BY HAND**

The Honorable Richard J. Holwell
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States* v. *Darryl Joe*,
              07 Cr 734 (RJH)

Dear Judge Holwell:

      The Government respectfully submits this letter both to provide the defense and the Court notice of certain evidence that the Government will seek to introduce at trial and to request rulings *in limine*, prior to opening statements, on the admissibility of certain evidence, as well as to respond to a *pro se* motion allegedly filed by the defendant.  In particular, the Government seeks rulings:

      (1)    that the Government be allowed to introduce evidence regarding the defendant's prior possession of a handgun in 2003 under Federal Rule of Evidence 404(b);

      (2)    that the Government be allowed to cross-examine the defendant, should he testify, on his prior felony conviction pursuant to Federal Rule of Evidence 609(a)(1);

      (3)    precluding the defense from eliciting testimony from a Government witness about a conviction for possession of drugs and an arrest, since dismissed, for possession of drugs;

      (4)    precluding the defense from eliciting evidence of the defendant's trial and acquittal in the Southern District of New York last year; and

      (5)    denying the defendant's *pro se* motion to dismiss.

Hon. Richard J. Holwell
March 3, 2008
Page 2 of 17

## The Indictments

On August 9, 2007, a federal grand jury in this district indicted Darryl Joe (the "defendant") on one count of being a previously-convicted felon in possession of ammunition, in violation of Title 18, United States Code, Section 922(g)(1). On November 28, 2007, a federal grand jury in this district returned a superseding indictment (the "Superseding Indictment"), charging the defendant on four counts: being a previously-convicted felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(1); possession of an unregistered sawed-off shotgun, in violation of Title 26, United States Code, Section 5861(d); carjacking, in violation of Title 18, United States Code, Section 2119(1); and brandishing a firearm – and aiding and abetting the brandishing of a firearm – during and in relation to a federal crime of violence, in violation of Title 18, United States Code, Sections 924(c) and 2.

## Underlying Facts

On or about July 14, 2007, two armed men – one of them carrying a pistol and the other carrying a shotgun – stole a car from a person (the "Victim") at gunpoint. (*See* Complaint ¶ 2(a)). The Victim called 911 and reported the carjacking. (*See id.*). Shortly thereafter, a police officer saw the Victim's car, being driven by an individual, later identified as the defendant, who matched the description of one of the suspects. (*See* Complaint ¶ 2(b)).

After the police drove behind the Victim's car, the defendant stopped the car, jumped out and ran into a building. (*See* Complaint ¶ 2(b)). At that time, the defendant was wearing a blue striped shirt. As he was securing the Victim's car, a police officer saw a bag on floor in the back of the car with a shotgun sticking out of it. (*See id.*). The bag turned out to contain not only a sawed-off Remington shotgun, but also several rounds of shotgun ammunition. (*See* Complaint ¶¶ 2(b) and 3(b)).

Police officers entered the building and found the defendant, out of breath and sweating, in the hallway of one of the floors. (*See* Complaint ¶ 3(a)). The defendant was unable to explain his presence in the building satisfactorily. (*See id.*). When the defendant was brought outside, the police officers who saw the defendant run from the Victim's car into the building identified the defendant. (*See id.*). Although the defendant was now just wearing a white undershirt, police officers found a blue striped shirt on the ground, below a stairwell window in the building in which they had just found the defendant. Later, at a police station, the Victim also identified the defendant as one of the men who stole the Victim's car at gunpoint.

Hon. Richard J. Holwell
March 3, 2008
Page 3 of 17

I.  **The Facts Underlying the Defendant's Prior Conviction for Possession of a Firearm Should Be Admitted as Evidence of Intent, Knowledge, and Absence of Mistake or Accident Pursuant to Rule 404(b)**

Evidence of a defendant's prior bad acts may be admitted to prove things such as a defendant's intent, knowledge, and absence of mistake or accident pursuant to Federal Rule of Evidence of 404(b). In this case, the Government expects that the defendant will raise the defense, either through argument or through testimony or both, that he did not possess a firearm on July 14, 2007; that whatever the Victim saw the defendant carry, or saw the Defendant's cohort carry, was not a gun; and that the gun recovered from the Victim's car was not the defendant's gun or was not the defendant's cohort's gun, placed in the defendant's possession.

Should the defendant raise this defense – whether in his opening statement, through questions on cross-examination or through the presentation of evidence – the Government respectfully requests that it be allowed to offer evidence of the facts and circumstances supporting the defendant's 2003 felony conviction for possessing a loaded 9mm Interarms model pistol as evidence that the defendant had knowledge of the gun in his hand during the carjacking, as well as knowledge of the gun recovered from the Victim's car, and that the defendant's possession and use of those guns was not a mistake or accident. As is discussed in more detail below, this evidence would be offered for a proper purpose, is relevant to this case, and would not unfairly prejudice the defendant.

A.  **The Proffered Evidence**

If permitted by the Court, the Government would prove that on July 27, 2003, the defendant possessed a loaded 9mm Interarms model firearm in the vicinity of 1223 Boston Road in the Bronx, New York, which is near where the defendant possessed a gun in the instant case. The evidence would further show that, at that time and place, an NYPD officer observed the defendant with a black bag on his shoulder; that the defendant threw the bag to the ground and ran; and that the bag contained the loaded gun.

B.  **The Applicable Law – Rules 404(b) and 403**

Evidence of "similar acts" is admissible under Rules 404(b) and 403 of the Federal Rules of Evidence if such evidence is relevant to some issue at trial other than the defendant's character, and if the probative value is not substantially outweighed by the risk of unfair prejudice. *See Huddleston* v. *United States*, 485 U.S. 681, 685-86 (1988); *United States* v. *Edwards*, 342 F.3d 168, 176-77 (2d Cir. 2003). Under this Circuit's "inclusionary" approach to Rule 404(b), "evidence of prior crimes, wrongs or acts is admissible for any purpose other than to show a defendant's propensity" unless the probative value of the proffered evidence is "substantially outweighed by the danger of unfair prejudice." *United States* v. *Paulino*, 445 F.3d

Hon. Richard J. Holwell
March 3, 2008
Page 4 of 17

211, 221 (2d Cir. 2006). The Second Circuit has routinely approved the admission of prior misconduct evidence – including arrests without evidence of conviction – with respect to the issues of a defendant's knowledge, intent, and absence of mistake, where those issues are in dispute. *See*, *e.g.*, *United States* v. *Mitchell*, 328 F.3d 77, 82 (2d Cir. 2003) (affirming the trial court's decision to include evidence of the defendant's prior arrest-with no evidence of a prior conviction-on the ground that "[e]vidence of prior bad acts may be introduced to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident'"); *United States* v. *Jamison*, 299 F.3d 114, 121 n.3 (2d Cir. 2002); *United States* v. *Thomas*, 54 F.3d 73, 81-82 (2d Cir. 1995); *United States* v. *Oshatz*, 912 F.2d 534, 542-43 (2d Cir. 1990).

As with most other evidence, evidence offered under Rule 404(b) is subject to the balancing test of Rule 403. Rule 403 provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). To exclude 404(b) evidence under this standard, a "[d]efendant must show some *undue* prejudice, apart from the prejudice implicit in Rule 404(b) evidence." *United States* v. *Vargas*, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988) (emphasis added).

### C. Applicable Law Regarding Admissibility of Prior Weapons Possession

The Second Circuit has held that where a defendant raises a claim that he lacked the knowledge, intent, or motive to commit the charged crime, the Government is permitted to introduce evidence of the defendant's prior possession of a gun. *See*, *e.g.*, *United States* v. *Jamison*, 299 F.3d 114, 121 n.3 (2d Cir. 2002) (holding that when the defendant's intent to commit a robbery and possess a gun illegally are at issue, the district court properly admitted evidence of the defendant's prior armed robbery as evidence of the defendant's intent to commit the charged crimes). In the context of felon-in-possession cases, the Second Circuit has held that evidence of possession of other handguns is properly admitted to show "intent . . . knowledge . . . or absence of mistake or accident." *United States* v. *Brown*, 961 F.2d 1039, 1041 (2d Cir. 1992) (gun found in defendant's truck was properly admitted 404(b) evidence where defendant denied that he possessed charged gun found in home) (quotation omitted). Several other Circuits have held similarly, as have other judges in this District. *See*, *e.g.*, *United States* v. *Davis*, 154 F.3d 772, 779-80 (8th Cir. 1998) (evidence of prior arrest for possession of firearm admissible to prove knowledge in firearms trial); *United States* v. *Gomez*, 927 F.2d 1530, 1534 (11th Cir. 1991) (prior conviction of possession of firearms relevant to current charge of possession of firearm to rebut claim that the current firearm possession was for an "innocent purpose" or "was

mere accident or coincidence"); *United States* v. *Davis*, 792 F.2d 1299, 1305 (5th Cir. 1986) (holding that evidence of defendant's prior possession of same weapons admissible to establish that charged possession was knowing); *United States* v. *Slaughter*, No. 03 Cr. 455, 2004 WL 856323, at *2 (S.D.N.Y. Apr. 20, 2004) (Keenan, J.) (noting that "[the defendant's prior possession of a weapon] goes to the issue of knowledge and lack of mistake or accident" and is therefore admissible under Rule 404(b)). As the District of Columbia Circuit has observed,

> the elements of [the defendant's] crime included possession, which in turn requires knowledge and intent. A prior history of intentionally possessing guns, or for that matter chattels of any sort, is certainly relevant to the determination of whether a person in proximity to such a chattel on the occasion under litigation knew what he was possessing and intended to do so.

*United States* v. *Cassell*, 292 F.3d 788, 794-795 (D.C. Cir. 2002).

### D. Evidence of the Defendant's 2003 Possession of a Firearm Should Be Admitted

Here, given the defendant's expected defense that he did not possess any firearm, the Government is offering the evidence of his prior firearms possession for the proper purposes of demonstrating the defendant's criminal intent to possess the firearms at issue in this case, the defendant's knowing possession of those guns, and the absence of any mistake or accident associated with that possession. The Government has the burden of proving the defendant's knowledge beyond a reasonable doubt at trial. *See United States* v. *Hastings*, 918 F.2d 369, 373 (2d Cir. 1990) (holding that the possession of a firearm can be established only if the possession is "knowing"). Accordingly, the fact that the defendant possessed a loaded handgun on a prior occasion "is certainly relevant to the determination of whether . . . he knew what he was possessing and intended to do so." *Cassell*, 292 F.3d at 794-95. Similarly, the fact that the defendant possessed a gun on a previous occasion and that he threw that gun away when confronted by a police officer makes it more likely that he possessed the firearm and acted purposefully, and not mistakenly or accidentally, when he fled from the Victim's car into the building, leaving the sawed-off shotgun behind.

The Court should not exclude this evidence under Rule 403, because the danger of unfair prejudice by its admission does not outweigh the evidence's probative value. First, as discussed above, the proffered evidence is highly probative of the defendant's knowledge and intent. Second, the proffered evidence is not unfairly prejudicial because it does "not involve conduct any more sensational or disturbing than the crime with which [the defendant] was charged." *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Indeed, the prior conduct is nearly identical to part of the conduct charged in this case, and far less sensational than the armed

Hon. Richard J. Holwell
March 3, 2008
Page 6 of 17

carjacking also charged in this case. Accordingly, there is no danger of any unfair prejudice to the defendant *substantially outweighing* the probative value of the proffered evidence.

In any event, the Court may minimize any prejudice to the defendant with a limiting instruction to remind the jury that the defendant is not on trial for any offense other than the crimes charged. *See United States* v. *Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant); *see generally Parker* v. *Randolph*, 442 U.S. 62, 75 n.7 (1979) ("The 'rule'—indeed, the premise upon which the system of jury trials functions under the American judicial system—is that juries can be trusted to follow the trial court's instructions."). Accordingly, the Government should be permitted to offer the proffered evidence if the defense presents arguments or evidence that relate to the above-referenced issues.

II.     **The Government Should Be Permitted to Cross-Examine the Defendant Regarding His Prior Felony Conviction Pursuant to Federal Rule of Evidence 609**

Should the defendant testify, the Government respectfully requests that it be permitted to cross-examine him regarding his 2003 conviction for possession of a loaded gun. The fact of the 2003 conviction will already be in evidence as part of the Government's case-in-chief, as will the details associated with that event if the Government's 404(b) motion is granted. Cross-examination on this subject will therefore not reveal any information not already known to the jury, thus mitigating or eliminating any unfair prejudice to the defendant.

Federal Rule of Evidence 609(a) allows for the introduction of convictions punishable by imprisonment in excess of one year to impeach the credibility of the defendant in a criminal case, subject to a prescribed balancing of probative value and prejudicial effect of evidence. The rule specifically provides that any such conviction "shall be admitted if the [trial] court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R. Evid. 609(a)(1).

"Fed. R. Evid. 609(a)(1) vests broad discretion in the trial judge to admit, for purposes of impeachment, evidence that the witness has been convicted within ten years of the time of his testimony of a crime punishable by imprisonment in excess of one year." *United States* v. *Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984). However, "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).

The defendant's 2003 conviction – which falls squarely within Rule 609's ten-year window – bears directly upon his credibility. The serious nature of the defendant's prior offense

Hon. Richard J. Holwell
March 3, 2008
Page 7 of 17

may be considered by the jury as indicative of his lack of veracity. Such convictions are probative of a defendant's respect for the law and are directly relevant to an examination of his credibility. *See*, *e.g.*, *United States v. Hourihan*, 66 F.3d 458, 464 (2d Cir. 1995) (affirming district court's admission of eight year-old felony conviction). Courts routinely admit evidence of such prior convictions, even when the prior offenses are of the same type as the instant charges. *See*, *e.g.*, *United States v. Smith*, 49 F.3d 475, 478 (8th Cir. 1995) (evidence of defendant's prior gun conviction properly used to impeach his credibility in case charging defendant with being a felon in possession of a firearm).

### III. The Defense Should Not Be Permitted To Cross-Examine The Victim, Or Otherwise Introduce Evidence, Regarding The Victim's Prior Arrest And Conviction For Drug Possession.

In 1993, the Victim was convicted, upon a plea of guilty, of criminal possession of a controlled substance in the seventh degree, a misdemeanor. Approximately three years ago, the Victim was arrested for possession of a controlled substance. Those charges were ultimately dismissed.

Rule 404(b) bars "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Clearly, the defendant's possession of drugs fifteen years ago, and alleged possession of drugs more recently, falls squarely within Rule 404(b)'s ban, as it cannot be admitted for any purpose other than to attack the Victim's character. Nor is there a pertinent trait of the Victim that can be evidenced by the past conviction and arrest, as allowed by Rule 404(a)(2). Nor could there be – this is not, for example, a case of provocation, and even if it were, such evidence would fail when analyzed pursuant to Rule 403. *See*, *e.g.*, *United States v. Schatzle*, 901 F.2d 252, 256 (2d Cir. 1990) ("Schatzle offered a single, three-year-old incident as evidence tending to show through inference that Gorayeb had instigated their altercation. The district court was well within its discretion in concluding that the potential delay from allowing a mini-trial on Gorayeb's conduct during his 1985 altercation with Diamond outweighed any likely probative value such an inquiry would yield upon the question whether Schatzle used excessive force upon Gorayeb. If anything, as the district court apparently recognized, allowing Schatzle to plunge into the facts underlying Gorayeb's 1985 arrest posed a genuine risk of focusing the jury upon the wrong event.").

Nor should the defense be permitted to inquire into either the conviction or the arrest on cross-examination. Mere possession of narcotics is not, in itself, probative of the truthfulness or untruthfulness of the witness, which is the key question under Rule 608(b). *See*, *e.g.*, *United States v. Whitley*, 04 Cr. 1381 (RCC), 2005 WL 2105535, *3 n.2 (S.D.N.Y. Aug. 31, 2005) (ruling that a prior narcotics possession conviction is inadmissible under both Rules 609 and 403,

Hon. Richard J. Holwell
March 3, 2008
Page 8 of 17

stating that "[t]o the extent that the Government's motion is addressed to Stokes' conviction for narcotics possession rather than sale, the . . . and the prior conviction has little probative value on the matter of truthfulness).  The 1993 conviction,[1] moreover, falls outside of the ten-year window set by Rule 609 for cross-examination on prior convictions, and may therefore not be admitted "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Because mere drug possession is not probative of the witness's truthfulness, it can hardly be said that "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."  Fed. R. Evid. 609(a)(1).

### IV. The Court should preclude the defendant from offering or eliciting any evidence of a jury's acquittal of the defendant of felon-in-possession charges in 2007.

The Government also moves to preclude the defendant from eliciting evidence or otherwise putting before the jury the outcome of the defendant's trial – on the charge of being a previously-convicted felon in possession of a firearm – before the Honorable Laura Taylor Swain in 2007.  The fact of an acquittal is evidence of nothing and could have resulted for any number of reasons; at the same time, admission of such evidence would be unfairly prejudicial to the Government and likely to mislead and confuse the jury.

It is well-established that an acquittal or dismissal in front of a court does not establish that a defendant was innocent of the charged offenses.  It simply means that the prosecutors failed to meet their burden of proving his guilt beyond a reasonable doubt.  *See United States v. Marrero-Ortiz*, 160 F.3d 768, 775 (1st Cir. 1998) (acquittal does not establish that defendant is not guilty); *Prince v. Lockhart*, 971 F.2d 118, 122 (8th Cir. 1992) ("[J]udgments of acquittal are not generally relevant . . . because they do not prove innocence; they simply show that the government did not meet its burden of proving guilt beyond a reasonable doubt."); *United States v. Kerley*, 643 F.2d 299, 300-01 (5th Cir. 1981) ("[E]vidence of a prior acquittal [in state court arising from same incident] is not relevant because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime.").  Such evidence also is hearsay, and not admissible under any exception to the hearsay rules.  Rule 803(22) exempts judgments of *conviction* from the hearsay rules, but does not allow for the introduction of acquittals.

Because of the dubious evidentiary value of prior acquittals and the lack of foundation for their admissibility, courts have excluded such evidence.  In *United States v. Viserto*, 596 F.2d

---

[1] The defendant has not provided the Government with the requisite written notice of his intent to introduce evidence of the Victim's 1993 conviction.  *See* Rule 609(b).  This argument, therefore, is being made preemptively.

531, 536-37 (2d Cir. 1979), the Second Circuit succinctly explained why such evidence is inadmissible:

> A judgment of acquittal is relevant to the legal question of whether the prosecution is barred by the constitutional doctrine of double jeopardy or collateral estoppel. But *once it is determined that these pleas in bar have been rejected, a judgment of acquittal is not usually admissible to rebut inferences that may be drawn from the evidence that was admitted*. Not only does the inference appellants suggest not flow from the judgment of acquittal . . . , but also a judgment of acquittal is hearsay. The Federal Rules of Evidence except from the operation of the hearsay rule only judgments of conviction, Rule 803(22), not judgments of acquittal.

*Id.* (emphasis added).

This case presents a perfect example of why there is a flat ban on the admission of the fact of a previous acquittal. The defendant's acquittal in 2007 would serve no legitimate evidentiary purpose; however, it could confuse the jury about the evidence actually presented in the case, or cause the jury to be biased without cause, particularly if the defense spins the instant prosecution as "sour grapes" by the Government. Indeed, at this point, the Government has no intention of eliciting any evidence underlying its prior prosecution of the defendant,[2] and respectfully requests that the defendant be barred from doing so as well.

V.   **The Court Should Deny The Defendant's Purported Motion To Dismiss.**

On January 3, 2008, defense counsel informed the Government and the Court that his client had informed him that he had filed a *pro se* motion to dismiss the Superseding Indictment on the basis of alleged violations of the Speedy Trial Act, Title 18, United States Code, Section 3161. At that time, neither defense counsel, nor the Government nor the Court had received a copy of the motion to dismiss.

On January 14, 2008, the Court sent both the Government and defense counsel a copy of a "motion to supplement" that it had received from the defendant, along with a cover letter.

---

[2] The Government reserves the right to elicit evidence underlying its previous prosecution of the defendant should the defendant place facts in issue that can be addressed by the defendant's previous actions. For example, in that case, the defendant threw his firearm from a window when running from the police. In this case, the defendant threw his clothing from a window in order to disguise himself when running from the police. Should the defendant create a serious issue with this fact, the Government may seek to introduce evidence of his prior act.

Hon. Richard J. Holwell
March 3, 2008
Page 10 of 17

According to the cover letter, the "motion to supplement" was sent to the Clerk of the Court on December 30, 2007, and received on January 3, 2008. Both the cover letter and the "motion to supplement" refer to the defendant's *pro se* "motion to dismiss." To the knowledge of the Government, neither the Court, defense counsel nor the government has seen the defendant's original "motion to dismiss."

The "motion to supplement" must therefore be taken as the entirety of the defendant's "motion to dismiss," as he did not make any additional oral motion at the conference before the Court on January 3, 2008. (*See* defendant's December 30, 2007 cover letter (stating that he hopes that "my motion be heard on the above date [January 3, 2008]")). At a conference before the Court on February 20, 2008, defense counsel explicitly refused to adopt the defendant's motion to dismiss.

Even granting the defendant liberal leeway, as he filed the "motion to supplement" *pro se*, and therefore may not have known how to file a formal motion to dismiss, the defendant's motion should be denied for at least two reasons. First, this Court need not consider the defendant's *pro se* motion to dismiss, as he is represented by counsel, has not chosen to proceed *pro se*, and this Court may, and should, choose not to allow the defendant hybrid representation. Second, the motion to dismiss is meritless on its face.

    **A.    The Defendant Should Be Required To File Any Motion To Dismiss Through His Counsel.**

The motion to dismiss was submitted *pro se*, and was explicitly not adopted by defense counsel. Because defendant is represented, this Court may choose not to consider a *pro se* motion to dismiss, instead requiring the defendant to file any and all motions through appointed counsel. Indeed, case law has long recognized that defendants are not entitled to hybrid representation – where they are represented by counsel and also represent themselves. To the contrary, courts have long frowned upon such a practice.

"[A] defendant does not necessarily have a constitutional right to hybrid representation." *Bourdon* v. *Loughren*, 386 F.3d 88, 100 (2d Cir. 2006) (Oakes, J., concurring). *See also United States* v. *Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) ("a criminal defendant has no constitutional or statutory right to represent himself as co-counsel with his own attorney"); *United States* v. *Stevens*, 83 F.3d 60, 67 (2d Cir. 1996) (stating that a "defendant has no absolute right" to so-called "hybrid representation," that is, serving as co-counsel together with retained or appointed counsel); *accord United States* v. *Chavin*, 316 F.3d 666, 671-72 (7th Cir. 2002) (recognizing — in a case involving defendant who was an attorney — "along with all other circuits that have considered the question, that there is no Sixth Amendment right to hybrid representation"); *United States* v. *Singleton*, 107 F.3d 1091, 1101 n.7 (4th Cir. 1997) (citing cases from the D.C., Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits holding that defendants are not entitled to

Hon. Richard J. Holwell
March 3, 2008
Page 11 of 17

conduct certain parts of trial and have counsel conduct other parts). Simply put, "[a] defendant who elects to be represented by counsel surrenders the right to make the ultimate decision on a wide variety of matters," *Ennis* v. *LeFevre*, 560 F.2d 1072, 1075 (2d Cir. 1977), and "does not have a constitutional right to choreograph special appearances by counsel." *McKaskle* v. *Wiggins*, 465 U.S. 168, 183 (1984).

      Indeed, courts in this Circuit require defendants desiring hybrid representation to demonstrate a "compelling reason to justify [the defendant's] appearance as co-counsel," *United States* v. *Tutino*, 883 F.2d at 1141, even while acknowledging that granting such permission is within a district court's discretion. *See id.* Thus, in *Tutino*, the Second Circuit affirmed the district court's denial of a defendant's request to serve as co-counsel. The *Tutino* Court explained:

> [The defendant] offered no compelling reason to justify his appearance as co-counsel, and Judge Leval's concern that [the defendant] could use his role as co-counsel to testify without taking the stand was well founded. Denial of [the defendant's] motion was well within the sound exercise of Judge Leval's discretion.

*United States* v. *Tutino*, 883 F.2d at 1141. Similarly, in *Stevens*, the Second Circuit affirmed the district court's refusal to permit the defendant to serve as co-counsel at trial because the defendant

> was not claiming that his counsel was not adequately representing him, or that he would be unduly prejudiced by not being permitted to serve as co-counsel, and . . . [because his] appointment as co-counsel would be disruptive.

*See United States* v. *Stevens*, 83 F.3d at 66. Finally, in *United States* v. *Padilla*, No. S1 94 Cr. 313 (CSH), 1995 WL 5920, at *1 (S.D.N.Y. Jan. 5, 1995), the district court refused, going forward, even to consider any motions filed by the defendants, who were "ably represented by appointed counsel," characterized hybrid representation as a "rare privilege," and ruled that the defendants were "constrained to rely upon the advocacy of their respective counsel." *Id.* (noting that "the government correctly asserts that the clear weight of authority in this Circuit allows the Court to preclude a defendant from representing himself before the Court while he is represented by counsel").

      Although here the defendant has not requested to address the jury, the ability to make motions *pro se*, even while garnering the benefits of appointed counsel, is also contemplated by hybrid representation jurisprudence. Indeed, courts have regularly refused to consider *pro se* motions filed by the defendants where those defendants were represented by counsel as well.

*See*, *e.g.*, *United States* v. *DiPietro*, No. 02 Cr. 1237 (SWK), 2007 WL 3130553 at *1 (S.D.N.Y. Oct. 17, 2007) ("Pursuant to its docket-managing authority, a district court may reject purported pro se motions filed by a represented defendant . . . The Court also declined to treat DiPietro's letter, dated August 29, 2007, as a motion for reconsideration because it was also unadopted by counsel") (citing *United States* v. *Tracy*, 989 F.2d 1279, 1285 (1st Cir. 1993); *Mitchell* v. *Senkowski*, 489 F. Supp. 2d 147, 149 (N.D.N.Y. 2006) (collecting cases); *United States* v. *Cruz*, 94 Cr. 802, 1995 WL 313139 at *1 (E.D.N.Y. May 17, 1995)); *Bennett* v. *United States*, No. 03 Civ. 1852 (SAS), 97 Cr. 639 (SAS), 2004 WL 2711064 at *8 (S.D.N.Y. Nov. 23, 2004) ("Bennett has submitted numerous pro se motions and letters although he is represented by counsel in the instant matter. . . . To alleviate further improper filings, multiple submissions and the resulting confusion, I direct Bennett to file all future papers through his attorney. . . . The Court will no longer accept Bennett's pro se submissions").

      For the reasons set forth below, the defendant's *pro se* motion to dismiss is without merit – a conclusion reinforced by defense counsel's refusal to adopt the motion. The Court should, "pursuant to its docket managing authority . . . reject purported *pro se* motions filed by a represented defendant," instead requiring all motions – including any motions to dismiss – to be filed by counsel. *See DiPietro*, 2007 WL 3130553 at *1. Should there be a meritorious motion to be made, defendant can consult with counsel and they can determine together whether the motion is valid as a matter of law. However, allowing the defendant to distract the Court with frivolous motions, unsupported by law, the facts or even by defense counsel, allows the defendant to place an unnecessary burden on the resources of the Court, the Government and defense counsel.[3]

      **B.    The Defendant's *Pro Se* Motion To Dismiss Is Without Merit.**

      The defendant's *pro se* motion to dismiss complains of one exclusion of time: the exclusion of time on October 19, 2007. Although, on that date, the Court excluded time pursuant to the Speedy Trial Act, with the consent of defense counsel, through November 30, 2007 in the interest of justice, the defendant came before this Court only fourteen days later, on November 2, 2007, for a bail hearing. At the end of the bail hearing, the Court again excluded time pursuant to the Speedy Trial Act in the interest of justice.

      Notably, the October 19, 2007 court conference differs from all other conferences before this Court because the defendant was not present. In fact, the defendant made the choice not to

---

[3]     Indeed, the burden of such a motion on defense counsel has already manifested itself: the Court adjourned the trial at the request of the defendant largely due to the defendant's instruction to his attorney not to file motions until the Court ruled on the purported motion to dismiss – an instruction from which defense counsel was forced to seek relief from the Court.

Hon. Richard J. Holwell
March 3, 2008
Page 13 of 17

appear personally, for which reason this Court signed a force order in order to ensure the defendant's presence at future proceedings. The defendant was present on November 2, 2007.

At the November 2, 2007 bail hearing, moreover, the Court stated: "I am prepared to try the case at the earliest possible date. I have room on my calendar in November and December, and so if upon consultation with your client, Mr. Thau, you want to move quickly, the Court is in a position to do so." The defendant did not take advantage of this offer. Indeed, defense counsel, in the presence of the defendant and with no objection from the defendant, consented to an exclusion of time through November 30, 2007.

Since the defendant was first arraigned on August 14, 2007, five days after the grand jury indicted him, time has been consistently excluded. On all but two occasions, it was excluded upon consent and in the defendant's presence. The only two exceptions were: (1) on October 19, 2007, time was excluded through November 30, 2007, with the necessary findings and on consent, but without the defendant's presence because he refused to attend the proceedings; and (2) on January 3, 2008, time was excluded through March 10, 2008, with the necessary findings, but this time over defense counsel's objection.

For the reasons set forth below, the defendant's motion to dismiss should be denied.

> 1.  **Applicable Law**
>
>     a.  **Statutory Basis**

The Speedy Trial Act provides, in relevant part, that the trial of a charge

> shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The Act's 70-day period, however, is subject to the exclusions of time set forth in Section 3161(h), some of which are triggered automatically. *See* 18 U.S.C. § 3161(h)(1)-(7). One such automatic exclusion is for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). This exclusion exempts all time between the filing of a motion and the point at which all submissions on the motion are made to the court, regardless whether such time is reasonable. *See Henderson* v. *United States*, 476 U.S.321, 326-32 (1986); *See also United States* v. *DiTommaso*, 817 F.2d 201, 209 (2d. Cir. 1987). A similar provision excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement

Hon. Richard J. Holwell
March 3, 2008
Page 14 of 17

by the court." 18 U.S.C. § 3161(h)(1)(J). Because this 30-day limitation applies to pretrial motions, *see*, *e.g.*, *United States* v. *Bufalino*, 683 F.2d 639, 644-45 (2d Cir. 1982), once a motion is fully under advisement, the automatic exclusion of subsection 3161(h)(1)(J) lasts for a maximum of 30 days.

   Beyond the automatic exclusions, the Speedy Trial Act also grants a district court discretion to exclude, prospectively, additional periods if the court determines that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). In determining whether such a continuance is appropriate following indictment, the statute directs the judge to consider: (a) whether the failure to grant the motion would make continuation of the proceeding impossible or result in a miscarriage of justice, (b) whether the case is so unusual or complex as to render it unreasonable to proceed within the time limits set by the Act, and (c) whether in a case that is not unusual or complex, denial of a continuance would deny the defendant or the Government continuity of counsel or reasonable time necessary for effective preparation for trial. *See* 18 U.S.C. §3161(h)(8)(B).

   In order to exclude time under 18 U.S.C. §3161(h)(8)(A), the district judge must set forth "either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. §3161(h)(8)(A). The Second Circuit has held that a district court has complied with this requirement if the record demonstrates that it has considered the statutory factors and the interests of justice in excluding time under the Speedy Trial Act, even if the district court does not state the precise reasons for its determination. *See United States* v. *Breen*, 243 F.3d 591, 597 (2d Cir. 2001) (finding district court's ends-of-justice exclusion proper where, although court did not utter "magic words 'ends-of-justice,'" record demonstrated that court had considered statutory factors and performed balancing of interests prior to excluding time); *United States* v. *Tunnessen*, 763 F.2d 74, 78 (2d Cir. 1985) (holding that district court must indicate at time it grants ends-of-justice exclusion that court has balanced factors identified in Section 3161(h)(8), although court need not state "precise reasons" for its decision; finding exclusion improper because district court made "no reference to a continuance based on the ends of justice"); see also *United States* v. *Correa*, 182 F. Supp.2d 326, 328 n.1 (S.D.N.Y. 2001) (noting that "the precise reasons for granting the exclusion need not be set forth at the time the exclusion is made, so long as it is clear that the Court engaged in the proper consideration of the Act's purposes and consciously determined to exclude time"). In any event, an exclusion of time in the interest of justice, pursuant to Section 3161(h)(8)(A), does not depend on the consent of the defendant. Rather, such exclusions may be granted "by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government." *See* 18 U.S.C. § 3161(h)(8)(A). Thus, the Speedy Trial Act "does not require the consent of the defendant or his counsel." *United States* v. *Asubonteng*, 895 F.2d 424, 427 (7th Cir. 1990).

Hon. Richard J. Holwell
March 3, 2008
Page 15 of 17

The Supreme Court recently addressed the Speedy Trial Act in *Zedner* v. *United States*, 547 U.S. 489, 126 S. Ct. 1976 (2006). The Supreme Court did note that time could not be excluded under the Speedy Trial Act simply on the basis of the consent or waiver of the defendant. *See Zedner*, 546 U.S. at ___, 126 S. Ct. at 1985. However, a finding by the Court of the necessity of an ends-of-justice continuance is sufficient, so long as those findings exist in the mind of the judge at the time the continuance is granted, and are set forth in the record of the case before or when the motion to dismiss is decided. *See id.*, 546 U.S. at ___, 126 S. Ct. at 1989.

        **b.**        **Constitutional Basis**

Where a defendant alleges that he was deprived of his Sixth Amendment right to a speedy trial, the Supreme Court has established a two-tiered inquiry for evaluating such a claim. First, in order even to trigger a Sixth Amendment analysis, the period between accusation and trial must cross the threshold dividing "ordinary" from "presumptively prejudicial" delay since, "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett* v. *United States*, 505 U.S. 647, 651-52 (1992). There is no set definition of "presumptively prejudicial," and "[t]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case*.*" *Barker* v. *Wingo*, 407 U.S. 514, 530 (1972). In other words, as the Supreme Court has emphasized, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id*.

If, in light of the nature and complexity of the case, the delay between accusation and trial is uncustomarily long, then and only then does the court analyze other factors in determining whether the delay was so great, inexcusable, and prejudicial as to infringe the Sixth Amendment. *United States* v. *Vassell*, 970 F.2d 1162, 1164 (2d Cir. 1992). In this circumstance, four factors "must be considered in determining whether a defendant's sixth amendment right to a speedy trial has been violated: (i) the length of the delay, (ii) the reason for the delay, (iii) whether and how the defendant has asserted his speedy trial rights, (iv) resultant prejudice, if any." *Garcia Montalvo* v. *United State*s, 862 F.2d 425, 426 (2d Cir.1988) (per curiam) (citing *Barker*, 407 U.S. at 530-32). "No one of these factors, however, is 'either a necessary or sufficient condition to the finding of a deprivation of a right,' and courts still must engage in a sensitive balancing process whereby the conduct of *both* the prosecution and the defendant are weighed." *Rayborn* v. *Scully*, 858 F.2d 84, 89 (2d Cir. 1988) (emphasis in original) (quoting *Barker*, 407 U.S. at 530). Applying these standards, the Supreme Court has upheld pretrial delays "well over five years," *Barker*, 407 U.S. at 533, and this Court has upheld delays of up to 58 months. *United States* v. *Lane*, 561 F.2d 1075, 1078 (2d Cir. 1977); *see also United States* v. *DiFrancesco*, 604 F.2d 769, 776 (2d Cir. 1979) (upholding 30-month delay), *rev'd on other grounds,* 449 U.S. 117(1980); *United States* v. *Vasquez*, 918 F.2d at 338 (noting that "delay of 24 months is 'considerably shorter than that of other cases in which no Sixth Amendment violation has been found'") (quoting *United States* v. *McGrath*, 622 F.2d 36, 41 (2d Cir.1980)).

Hon. Richard J. Holwell
March 3, 2008
Page 16 of 17

### B. Discussion

Here, the defendant's *pro se* motion to dismiss should be denied for at least five reasons.

First, the Court has repeatedly excluded time under the Speedy Trial Act in the interest of justice – indeed, it has done so continuously since the defendant was arraigned five days after he was indicted. As long as the Court, which was well-aware of developments in the case, had found that an ends-of-justice continuance was necessary, the exclusion of time was proper. The Court can satisfy its obligations, under *Zedner*, to place its findings on the record by doing so in denying the defendant's *pro se* motion to dismiss. Primary among the reasons not to deny such an exclusion of time would have been the need to allow "counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence," particularly in light of both parties' expressed attempts to obtain 911 tapes that could serve as evidence at trial, the Government's informal proffers to defense counsel that it would seek a superseding indictment, and the Government's and defendant's ongoing plea discussions. Indeed, the need of defense counsel for additional time for effective preparation was proved by the defendant's decision to spurn the Court's offer of an expeditious trial.

Second, although it is not dispositive on its own, defense counsel has consented to all but one exclusion of time in the interest of justice, and the defendant was present at all but one of those statements of consent, and has not made his own objections. The one consent for which the defendant was not present occurred on October 19, 2007, when the defendant refused to come to Court. And the one time that the Court excluded time over defense counsel's objection was on January 3, 2008, when defense counsel informed the court of the *pro se* motion to dismiss, which still is not fully submitted. Accordingly, the time from January 3, 2008, through no more than thirty days after full submission of the *pro se* motion to dismiss is automatically excluded pursuant to Title 18, United States Code, Sections 3161(h)(1)(F)&(J).

Third, the defendant has made a very limited motion to dismiss, relying solely on what he claims to be a "'complete' miscourage [*sic*] of 'justice'" relating to this Court's exclusion of time on October 19, 2007. Although that exclusion of time was set through November 30, 2007, the Court again excluded time – in the defendant's presence and with his consent – on November 2, 2007, after offering him an opportunity to go to trial expeditiously. Accordingly, even if the October 19, 2007, exclusion of time were improper under the Speedy Trial Act – and it was not – it would only represent fourteen of the seventy days the Government is granted to take the defendant to trial under the Speedy Trial Act.

Fourth, on both November 2, 2007 and January 3, 2008, this Court explicitly offered the defendant the opportunity to go to trial as quickly as possible. The defendant declined that

Hon. Richard J. Holwell
March 3, 2008
Page 17 of 17

opportunity, even requesting an adjournment of trial on February 20, 2008. The defendant should not now benefit from his decision not to go to trial quickly.

Fifth, the defendant has made no argument of prejudice or delay sufficient to implicate his Sixth Amendment rights. Indeed, the Court offered the defendant the opportunity to go to trial in November of 2007, less than three months after the defendant was indicted. The defendant declined the opportunity. Trial was ultimately scheduled to begin approximately seven months after the defendant was first indicted, and then adjourned, at the defendant's request, to begin approximately eight months after the defendant was first indicted. This falls far short of a Sixth Amendment Violation. *See Vasquez*, 918 F.2d at 338 (noting that "delay of 24 months is 'considerably shorter than that of other cases in which no Sixth Amendment violation has been found'").

Ultimately, as the Court is obviously aware, since the defendant's initial appearance before Your Honor on August 14, 2007, all time has been excluded, leaving 65 days on the Speedy Trial clock. Accordingly, the defendant's *pro se* motion to dismiss should be denied.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By:     __/s/_____
Michael D. Maimin
Assistant United States Attorney
Southern District of New York
(212) 637-2238

cc:     Roland Thau, Esq.